UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

VITALY PLUSCHAKOV,

                Petitioner,

    v.

ICE FIELD OFFICE DIRECTOR,

                Respondent.

CASE NO. 2:26-cv-01298-DGE

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 4)

This matter comes before the Court on Petitioner Vitaly Pluschakov's petition for writ of habeas corpus.  (Dkt. No. 4.)  Having reviewed the petition, the response memorandum (Dkt. No. 8) and all supporting materials,[1] the Court GRANTS the petition.

## I  BACKGROUND

**A. Factual Background**

---

[1] While the Court did not receive Petitioner's reply, the Court finds it has sufficient information to rule and grants this petition in the interest of justice under Federal Rule of Civil Procedure 1.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 4) - 1

Petitioner was born in Estonia in 1988 when it was part of the Union of Soviet Socialist Republics ("USSR").  (Dkt. Nos. 9 at 2; 10-1 at 2.)  Petitioner was admitted to the United States in 1988 as a refugee and became a lawful permanent resident in 1989.[2]  (Dkt. No. 9 at 2.)  Petitioner has a history of drug- and theft-related offenses dating back to 2011.  (Dkt. No. 10-2 at 4–5.)

In March 2014, Petitioner was placed in removal proceedings because of one of his criminal convictions.  (Dkt. No. 9 at 2.)  He filed for relief from removal on March 17, 2014 and was granted relief on April 24, 2014.  (*Id*. at 2–3.)  After this, Petitioner had several additional criminal incidents.  (*See* Dkt. No. 10-2 at 5.)  Based on a March 25, 2020 conviction for possession of a controlled substance with intent to deliver, Petitioner was again placed in removal proceedings.  (Dkt. No. 10-1 at 2.)  This time, by order dated September 27, 2023, Petitioner was ordered removed to Estonia or, in the alternative, Russia.  (Dkt. Nos. 10-2 at 4, 10-3 at 2.)

Petitioner asserts that soon after the issuance of his removal order, the requests for travel documents to both Estonia and Russia were denied.  (Dkt. No. 4 at 1.)  Subsequently, Petitioner was released from detention on December 14, 2023 and issued an order of supervision.  (*Id*. at 1; *see also* Dkt. Nos. 9 at 3; 10-4.)

Petitioner was scheduled to report for a check-in with Enforcement and Removal Operations ("ERO"), a division within Immigration and Customs Enforcement ("ICE"), on November 21, 2025, but failed to report.  (Dkt. Nos. 9 at 3: 10-2 at 3.)  On January 22, 2026, Petitioner contacted ERO and explained that he failed to report in November "due to travel

---

[2] The Notice to Appear identifies Petitioner became a legal permanent resident on June 14, 1988, which is the same day Respondents identify he was admitted as a refugee.  (Dkt. No. 10-1 at 2.)

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 4) - 2

distance and not having transportation." (Dkt. No. 9 at 3.) Petitioner informed ERO he was homeless and requested a new reporting date at the Spokane Sub-Office. (*Id*.)

On March 17, 2026, Petitioner appeared at the Spokane ICE Field Office without an appointment to report a change in address. (Dkt. No. 10-2 at 3.) At that time, ICE determined Petitioner failed to appear at his November 21, 2025 report date. (*Id*.) ICE also determined that Petitioner had been arrested on January 16, 2026 for criminal trespass and knowingly possessing a controlled substance. (*Id*.) Thereafter, Petitioner was detained and has remained at the Northwest ICE Processing Center since March 17, 2026. (*Id*.)

Respondents identify that on May 1, 2026, ERO transmitted an application for a travel document to the Estonian embassy in Washington, D.C. and that the application was denied on May 4, 2026. (Dkt. No. 9 at 4.) Respondents also identify, "ERO is attempting to obtain a Russian travel document for Petitioner." (*Id*.) Respondents identify Petitioner completed an application for a Russian travel document on June 13, 2026 and, on the same day, they "transmitted Petitioner's travel document application to the Embassy of the Russian Federation in Washington, DC, and requested a reply within seven days." (Dkt. No. 13 at 2.) As of June 22, 2026, Respondents were "awaiting a response from the Russian Embassy" but reported having "no reason to believe the Russian Embassy will not issue a travel document for Petitioner." (*Id*.) Respondents acknowledge they are "unable to predict a date-certain that the travel document will issue." (*Id*.)

**B. Procedural Background**

Petitioner first filed a proposed petition for writ of habeas corpus on April 13, 2026. (Dkt. No. 1.) He filed his amended petition (Dkt. No. 4), the operative petition in this matter, on May 13, 2026. Petitioner asserts a claim under the Fifth Amendment, asserting "ICE ha[s] failed

to show probable cause for Petitioner's renewed detention and neglected to show justification for his continued confinement.  Moreover, because the Petitioner cannot possibly be deported in the foreseeable future his release therefore must be secured."  (*Id*. at 3.)

Respondent responds that Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231(a)(6).  (Dkt. No. 8 at 2.)  Respondents asserts that Petitioner has been detained for less than six months, or within the presumptively reasonable six-month period established in *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).  (*Id*. at 5.)  The cumulative time Respondents have detained Petitioner subsequent to the entry of his order of removal is approximately 177 days (this includes Petitioner's detention from September 27, 2023 to December 14, 2023 and from March 17, 2026 to present).

## II    LEGAL STANDARD

### A. Petition for Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States." *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at \*5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241). Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'" *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### III    DISCUSSION

#### A.  *Zadvydas*/Fifth Amendment Due Process

The detention, release, and removal of noncitizens subject to a final order of removal is governed by INA § 241, codified at 8 U.S.C. § 1231.  The requirements of the statute take effect once a final order of removal of a non-citizen is entered by an immigration judge.  The removal period begins, relevant here, on "[t]he date the order of removal becomes administratively final[,]" *id.* § 1231(a)(1)(B), which in this case was September 27, 2023, when an immigration judge denied Petitioner's claims for relief and ordered Petitioner to be deported to Estonia or Russia, and Petitioner waived his right to appeal.  (Dkt. No. 10-3 at 2, 4.)

The first 90-day period following the entry of the order of final removal is called the "removal period."  *Id.* § 1231(a)(1)(A).  Detention is mandatory during that period.  *Id.* § 1231(a)(2).  However, once the 90-day removal period has expired, continued detention is at the discretion of the Attorney General.  *Id.* § 1231(a)(6).  There is no statutory limit on the Attorney General's discretion to detain non-citizens beyond the 90-day period, but in *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal.  533 U.S. at 692.  As the *Zadvydas* Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause."  *Id.* at 690.[3]  "Freedom from imprisonment—from government custody, detention, or other forms of

---

[3] Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001).  Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)).

physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* The *Zadvydas* Court concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

### B. Rebuttable Presumption

Under *Zadvydas*, the first six months of post-removal order detention is "presumptively" reasonable. 533 U.S. at 701. While "[t]he issue of whether noncitizens can challenge their detention under section§ 1231(a)(6) before the six-month period passes appears to be an open question in the Ninth Circuit," *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (S.D. Cal. 2018), multiple districts including this district have permitted such claims. *See, e.g.*, *id.*; *Wana v. Bondi*, No. 2:25-cv-02321-RSL, 2025 WL 3628634, *3 (W.D. Wash. Dec. 15, 2025).

Here, Petitioner's order of removal became final on September 27, 2023, when an immigration judge found Petitioner removable and Petitioner waived appeal. (Dkt. No. 10-3 at 2, 4.) At that point, the 90-day mandatory detention period kicked in. 8 U.S.C. § 1231(a)(1)(A), (a)(2). Petitioner was detained for approximately two and one-half months until December 14, 2023, when he was released on an Order of Supervision. (Dkt. No. 10-4 at 2.) The next time Petitioner was identified as being in ICE detention was on March 17, 2026. (Dkt. No. 10-2 at 6.) Petitioner has been detained for approximately three months. Courts in this district have held that "where a petitioner has been detained and released by ICE multiple times after a final order of removal, 'the clock' on *Zadvydas*'s six-month period of presumptive reasonability does not re-start with each successive detention." *Do v. Scott*, Case No. C25-2187RSL, 2025 WL 3470327, at *2 (W.D. Wash. Dec. 3, 2025). Accordingly, Petitioner has been detained for approximately 177 days, just three days less than the rebuttable presumption period.

### C. Significant Likelihood of Removal

While detention is presumed reasonable during the first six months of post-final order of removal detention, where a petitioner shows "his removal is not reasonably foreseeable," courts will find the presumption rebutted and due process violated. *Wana*, 2025 WL 3628634, at *3–4. Relevant factors other district courts appear to weigh in a petitioner's favor can include (1) being detained in a general sweep as opposed to being detained based on an individualized determination one's removal can be effectuated, (2) lengthy delays in effectuating the removal order, (3) delays in requesting travel documents after detention, and (4) a lack of information about what steps have been taken regarding potential travel documents. *Id.*, at *3 (presumption rebutted in part because there was no "individualized determination" petitioner was likely to be removed and rather he was "apparently swept back into custody during an ICE surge in immigrant re-detentions"); *Duong v. Warden, California City Detention Facility*, No. 1:26-cv-02715 DC SCR, 2026 WL 1243444, at *3 (E.D. Cal. May 6, 2026) (1998 removal order having not been effectuated thus far and a one-month delay between detention and requesting travel documents weighed in petitioner's favor); *Vijdani v. Mattos*, No. 2:25-cv-02496-GMN-EJY, 2026 WL 560209, *4 (D. Nev. Feb, 27, 2026) (no significant likelihood of removal where "Respondents merely state that ICE continues to seek the necessary travel documents" to remove petitioner but "fail to provide the Court with any evidence whatsoever to support their assertion, [] do not provide the Court with any real detail on the efforts they are taking to seek necessary travel documents" and clearly "do not currently have any travel documents for Petitioner.").

Here, Petitioner has shown "a constellation of characteristics and circumstances" that make his removal not reasonably foreseeable. *Wana*, 2025 WL 3628634, at *3. Petitioner was ordered removed in September 2023 but then released in December 2023 with an order of supervision. The only logical conclusion is that Respondents were unable to effectuate

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 4) - 7

Petitioner's removal to Estonia or Russia in 2023. At the time Petitioner was re-detained, Respondents had not conducted an individualized determination that they could effectuate Petitioner's removal to Estonia or Russia.

Respondents offer no information about what circumstances changed between 2023 and today that indicate it is now reasonable to expect Petitioner can be removed to Russia. In addition, when Respondents re-detained Petitioner in March of this year, Respondents had taken no efforts to secure Petitioner's removal. Respondents waited over a month to reach out to the government of Estonia to request a travel document, and that request was denied on May 4, 2026. Respondents then declared on May 27, 2026 that they were "attempting to obtain a Russian travel document for Petitioner" (Dkt. No. 9 at 4), but only submitted a travel document request to the government of Russia on June 13, 2026 (Dkt. No. 13 at 2). And again, Respondents provide no information as to why Russia might now issue a travel document when the record indicates in 2023 Respondents were unable to secure a travel document to Russia.

Moreover, there are serious questions as to what agreement Respondents may have with Russia for Russia to accept a citizen of the former USSR; in particular, one who was born in Estonia which has never been part of Russia. Respondents offer no information about why, how, or under what circumstances Russia will accept individuals, such as Petitioner, who were born in a region of the former USSR that never became part of Russia. Put simply, Respondents offer no criteria for the Court to evaluate whether Respondent's travel document request to Russia is likely to lead to Petitioner's removal to Russia in the reasonably foreseeable future. Respondents' statement that they "have no reason to believe the Russian Embassy will not issue a travel document for Petitioner" (Dkt. No. 13 at 2) is nothing more than wishful thinking that something may happen at some unforeseen time in the future under some unknown

circumstances.  This is simply insufficient for the Court to conclude Respondents have shown Petitioner's removal is reasonably foreseeable based on the record presented.

Accordingly, the Court finds Petitioner's removal not reasonably foreseeable and thus "unreasonable and no longer authorized by statute." *Zadvydas*, 533 U.S. at 699–700.[4][5]

## IV   ORDER

For the reasons identified herein, Petitioner's petition for writ of habeas corpus is GRANTED.

Accordingly, the Court GRANTS Petitioner's petition for writ of habeas corpus (Dkt. No. 4) and ORDERS:

1. Respondents and all their officers, agents, attorneys, and persons acting on their behalf or in concert with them SHALL release Petitioner from custody within **ONE (1) DAY** of this Order.  Petitioner shall be returned to the conditions of release he was subject to prior to his re-detention and any additional reasonable conditions based on Petitioner's recent criminal history.  Respondents, however, should take into consideration where Petitioner is likely to reside upon release.

2. Within **TWENTY-FOUR (24) HOURS** of this Order, Respondents shall provide the Court with a declaration confirming Petitioner has been released from custody.

3. Petitioner also asserts that he qualifies to receive an employment authorization card. (Dkt. No. 4 at 6.)  Petitioner must request employment authorization from United States

---

[4] Moreover, Petitioner has been detained for nearly six months.  That Petitioner would not be subject to the rebuttable presumption in less than a week further strengthens his argument that there is no reasonable likelihood of his removal.

[5] Having granted Petitioner's release under the Fifth Amendment, the Court does not consider Petitioner's other arguments.

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 4) - 9

Citizenship and Immigration Services.  Accordingly, the Court does not consider this request further.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 24th day of June, 2026.

David G. Estudillo
United States District Judge

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 4) - 10